CARTER H. STRICKLAND, JR., ESQ. (CS7672)
Rutgers Environmental Law Clinic
123 Washington Street
Newark, New Jersey 07102-3094
(973) 353-5695
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| HACKENSACK RIVERKEEPER, INC., | : | |
| RARITAN BAYKEEPER, INC. (d/b/a | : | |
| NY/NJ BAYKEEPER), ANDREW | : | |
| WILLNER, and WILLIAM SHEEHAN, | : | |
| | : | |
| Plaintiffs, | : | Civil Action |
| | : | |
| -versus- | : | |
| | : | Docket No. _____ |
| DELAWARE OSTEGO CORP., | : | |
| NEW YORK, SUSQUEHANNA & | : | |
| WESTERN RAILWAY CORP., | : | |
| MILLENNIUM RESOURCE | : | |
| RECOVERY, LTD., CROSSROADS | : | |
| RECYCLING, INC., RAILTECH, L.L.C., | : | |
| ONTRACK LOADING CO. INC. (d/b/a | : | |
| ONTRACK LOADING CO. LLC and | : | |
| LIBERTY CONTRACTING), | : | |
| CARDELLA TRUCKING CO., INC., | : | |
| and CARDELLA WASTE SERVICES | : | |
| OF NEW JERSEY, INC., | : | |
| | : | **COMPLAINT** |
| Defendants. | : | |

_____:

Plaintiffs bring this civil action and allege as follows:

1. This citizen seeks to shut down five unregulated solid waste facilities that are operating as open dumps and are disposing of solid waste into the environment in violation of federal law, and requests declaratory and injunctive relief to stop those violations.

The parties to this action are:

Plaintiffs

Raritan Baykeeper, Inc. (d/b/a NY/NJ
    Baykeeper)
52 West Front Street
Keyport, New Jersey 07735

Hackensack Riverkeeper, Inc.
231 Main Street
Hackensack, New Jersey 07601

Mr. Andrew Willner
52 West Front Street
Keyport, New Jersey 07735

Mr. William Sheehan
231 Main Street
Hackensack, New Jersey 07601

Defendants

Delaware Ostego Corp.
One Railroad Avenue
Cooperstown, New York 13326

New York, Susquehanna & Western
    Railway Corp.
One Railroad Avenue
Cooperstown, New York 13326

Millennium Resource Recovery, Ltd.
2531 94th Street
North Bergen, New Jersey 07047

Crossroads Recycling, Inc.
2531 94th Street
North Bergen, New Jersey 07047

RailTech, L.L.C.
1034 Hudson Avenue
Ridgefield, New Jersey 07657

OnTrack Loading Company, Inc. (d/b/a
    OnTrack Loading Co. LLC and Liberty
    Contracting)
215 Wiltsie Court
Wyckoff, New Jersey 07481

Cardella Trucking Co., Inc.
2400 Tonnelle Avenue
North Bergen, New Jersey 07047

Cardella Waste Services of New Jersey, Inc.
70 South Orange Avenue
Livingston, New Jersey 07039

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this citizen suit under 28

U.S.C. § 1331 and Section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42

U.S.C. § 6972(a).

3.    By letter dated August 3, 2005, and served on August 4, 2005, Plaintiffs provided

notice of the RCRA violations and their intent to sue pursuant to 42 U.S.C. § 6972 to each of the

Defendants, with copies to the Administrator of the United States Environmental Protection

Agency ("EPA"), the Regional Administrator of EPA – Region 2, the Attorney General of the

2

United States, the Commissioner of the New Jersey Department of Environmental Protection ("NJDEP"), the New Jersey Attorney General, and each registered agent for the Defendants.

4.    More than 60 days have passed since Plaintiffs served notice of the RCRA violations and their intent to sue.

5.    Neither EPA nor NJDEP has commenced or is diligently prosecuting any civil or criminal action in any court to redress the RCRA violations.

6.    Defendants have not voluntary ceased or corrected their RCRA violations and continue to own and/or operate open dumps.

7.    Venue is proper in the United States District Court for the District of New Jersey at Newark pursuant to 42 U.S.C. § 6972(a) because the violations are occurring in North Bergen, Hudson County, New Jersey.

<u>PARTIES</u>

8.    Plaintiff Raritan Baykeeper, Inc. (d/b/a NY/NJ Baykeeper) ("Baykeeper") is a non-profit public interest 501(c)(3) corporation, incorporated under the laws of the State of New Jersey, with its principal office in Keyport, New Jersey.  Founded in 1990, Baykeeper is a member of the Waterkeeper Alliance, an international organization of watershed advocates who work together to guarantee attainment of the "fishable and swimable" goals of the Clean Water Act by, in part, advocating for strict controls of upland sources of stormwater runoff and air emissions.

9.    Baykeeper acts a watchdog organization dedicated to the enhancement and preservation of the Hudson-Raritan Estuary and its constituent bays and tributaries.  Baykeeper's purpose is to protect and preserve the ecological integrity of the entire Hudson-Raritan Estuary and its tributaries and watersheds, including the Hackensack River and Hackensack

Meadowlands, to preserve and protect natural resources for the benefit of the general public, to stop pollution and influence land use decisions, to advance the Estuary's environmental and biological importance, and to establish environmental educational programs and public awareness of the value of conservation.

10.     Baykeeper has been actively involved in the preservation and protection of the Meadowlands since its inception.  An employee of Baykeeper is a member of the Meadowlands Conservation Trust, which seeks to preserve and protect wetlands and uplands in the Hackensack Meadowlands District for conservation and recreational purposes.  Baykeeper joins the Hackensack Riverkeeper on their pontoon boat five to ten times a year to discuss matters of joint interest to members of the public, government agencies and media.

11.     Baykeeper, through its corporate member and parent the American Littoral Society, has individual members and supporters that use the Hackensack River, surrounding wetlands and uplands on a weekly basis for  boating, fishing, and bird-watching.  In addition, members and supporters live in the North Bergen area.  These members and supporters frequently notice stormwater pollution, dust and other airborne pollution, the continued destruction of wetland habitat, murky water, sedimentation, riverbank discharges, and foul odors while navigating the Hackensack River, using surrounding uplands and wetlands, or moving about North Bergen.  If it were not for these continuing sources of pollution, the impact on the immediate environment, and their concern about associated health risks, the members and supporters would enjoy greater use of the area for recreational, swimming and fishing activities.

12.     Defendants' acts and omissions have adversely affected, are adversely affecting, and will continue to adversely affect, the interests of Baykeeper, its officers, directors, advisers, trustees, employees, members and supporters.

13.     Plaintiff Andrew Willner is the executive director of Baykeeper and has been its leader since 1990.  For at least the last fifteen years, continuing to date, Mr. Willner has visited the Hackensack River in a professional and personal capacity on at least a monthly basis.  His regular personal activities on the River include boating, fishing, and bird-watching.  Mr. Willner frequently notices stormwater pollution, dust and other airborne pollution, the continued destruction of wetland habitat, murky water, sedimentation, riverbank discharges, and foul odors while navigating the Hackensack River or using its associated wetlands and uplands.  If it were not for these continuing sources of pollution, the impact on the immediate environment, the continued destruction of wetland habitat, and his concern about health risks associated with the River, Mr. Willner would enjoy greater use of the area for recreational, swimming and fishing activities.

14.     Defendants' acts and omissions have adversely affected, are adversely affecting, and will continue to adversely affect, the Mr. Willner's interests.

15.     Plaintiff Hackensack Riverkeeper, Inc. ("Riverkeeper") is a not-for-profit public interest 501(c)(3) corporation, organized under the laws of the State of New Jersey, with its principal place of business in Hackensack, New Jersey.  Founded in 1997, Hackensack Riverkeeper, Inc. is a member of the Waterkeeper Alliance, an international organization of watershed advocates who work together to guarantee attainment of the "fishable and swimable" goals of the Clean Water Act by, in part, advocating for strict controls of upland sources of stormwater runoff and air emissions.

16.     Riverkeeper's purpose is to protect, preserve and restore the Hackensack River, its associated wetlands and uplands, and other living resources and to increase public awareness of the lower Hackensack River watershed as a vital natural and recreational resource by working

in partnership with educators to develop curricula, materials, and programs to educate the public.

17.     Riverkeeper operates the Eco-Cruise, Eco-Walk, and the Hackensack Riverkeeper Canoe Project programs.  Eco-Cruises are boat tours of the Hackensack River and Meadowlands. Eco-Walks are guided field trips to unique habitat areas within the Hackensack River watershed. The Riverkeeper Canoe Project is a recreational canoe rental facility, which also hosts various canoeing events and competitions.  Riverkeeper's funding depends, in large part, on donations and fees resulting from the Eco-Cruise, Eco-Walk, and Riverkeeper Canoe Project programs.

18.     The Eco-Cruise, Eco-Walk, and Riverkeeper Canoe Project  programs attract visitors who are taught about the Hackensack River.  This directly increases public awareness of the lower Hackensack River watershed as a vital natural and recreational resource.   The success of these programs depends on the physical, aesthetic, recreational, biological, and chemical health, viability, and safety of the River and its associated wetlands and uplands.  When uplands habitat, wetlands habitat, associated wildlife and the River are harmed by stormwater and air pollution, fewer people are interested in visiting the River, and Riverkeeper obtains less revenue.

19.     Riverkeeper has individual members and supporters that use the Hackensack River, surrounding wetlands and uplands on a weekly basis for boating, fishing, and bird-watching.  In addition, several members and supporters live in North Bergen.  These members and supporters frequently notice stormwater pollution, dust and other airborne pollution, the continued destruction of wetland habitat, murky water, sedimentation, riverbank discharges, and foul odors while navigating the Hackensack River, using surrounding uplands and wetlands, or moving about North Bergen.  If it were not for these continuing sources of pollution, the impact on the immediate environment, and their concern about associated health risks, the members and supporters would enjoy greater use of the area for recreational, swimming and fishing activities.

20.     Defendants' acts and omissions have adversely affected, are adversely affecting, and will continue adversely to affect, the interests of Riverkeeper, its officers, directors, advisers, trustees, employees and supporters.

21.     Plaintiff William Sheehan is a salaried employee and the executive director of Riverkeeper.  Mr. Sheehan and Hackensack Riverkeeper undertake many activities to protect the Hackensack Meadowlands environment.  In addition to the formal programs discussed above, Mr. Sheehan and members of Riverkeeper continually patrol the Hackensack River on their pontoon boat and, at least several times a month, take interested members of the public, including State and Federal government officials and media, on tours to discuss environmental issues on an informal basis.  In addition, Mr. Sheehan is Chairman of the Meadowlands Conservation Trust, which seeks to preserve and protect land for conservation and recreational purposes in the Hackensack Meadowlands.

22.     As a native and current resident of Secaucus, and as the Riverkeeper, Mr. Sheehan also has a personal interest in environmental health of the Hackensack River and its associated wetlands and uplands.  The success of the Riverkeeper program depends on the physical, aesthetic, recreational, biological, and chemical health, viability, and safety of the River and its associated wetlands.  If the program is unsuccessful, Riverkeeper is likely to have severe financial problems.  Mr. Sheehan, therefore, has a financial stake in the physical, aesthetic, recreational, biological, and chemical health, viability, and safety of the Hackensack River and its associated wetlands. Mr. Sheehan has used of the Hackensack River for most of his life for recreational purposes, including nature walks along the river, boating, fishing, and bird watching. For at least the last seven years, continuing to date, Mr. Sheehan has visited the Hackensack River and North Bergen area in a personal and professional capacity on an almost daily basis.

23.    Mr. Sheehan frequently notices stormwater pollution, dust and other airborne pollution, the continued destruction of wetland habitat, murky water, sedimentation, riverbank discharges, and foul odors while navigating the Hackensack River and using its associated wetlands and uplands.  If it were not for stormwater pollution, dust and other airborne pollution, the continued destruction of wetland habitat, and his concern about health risks associated with the River, Mr. Sheehan would enjoy greater use of the area for recreational, swimming and fishing activities.

24.    Each Plaintiff is a "person" authorized to bring a citizen suit action under 42 U.S.C. § 6972.

25.    Defendant Delaware Ostego Corp. is a privately-held corporation formed under the laws of the State of New York, with its principal place of business at One Railroad Avenue, Cooperstown, New York, 13326.

26.    Defendant New York, Susquehanna & Western Railway Corp. ("NYS&W") is a wholly-owned subsidiary of Defendant Delaware Ostego Corp. and is a corporation formed under the laws of the State of New Jersey, with its principal place of business at 3 Railroad Avenue, Rochelle Park, New Jersey 07662, and its main business address at One Railroad Avenue, Cooperstown, New York, 13326.  NYS&W operates over 400 miles of track in New York, New Jersey, and Pennsylvania, and owns and operates some industrial sites adjacent to its tracks.

27.    Defendant Millennium Resource Recovery, Ltd. ("Millennium") is a corporation formed under the laws of the State of New Jersey with its principal place of business at 2531 94th Street, North Bergen, New Jersey 07047.

28.    Defendant Crossroads Recycling, Inc. ("Crossroads") is a corporation formed

8

under the laws of the State of New Jersey with its principal place of business at 2531 94th Street, North Bergen, New Jersey 07047, its main business address at 64 Mount Ranier Avenue, Farmingville, New York 11738, and a registered agent at 162 Valley Boulevard, Wood Ridge, New Jersey 07075.

29.     Defendant RailTech, L.L.C. ("RailTech") is a corporation formed under the laws of the State of New Jersey with its main business address at 1034 Hudson Avenue, Ridgefield, New Jersey 07657.

30.     Defendant OnTrack Loading Inc. (also d/b/a OnTrack Loading Company LLC and Liberty Contracting) ("OnTrack") is a corporation formed under the laws of the State of New Jersey with its main business address at 215 Wiltsie Court, Wyckoff, New Jersey 07481.

31.     Defendant Cardella Trucking Co., Inc. is corporation formed under the laws of the State of New York with its principal place of business at 2400 Tonnelle Avenue, North Bergen, New Jersey 07047.

32.     Cardella Waste Services of New Jersey, Inc. (together with Cardella Trucking Co., Inc., referred to as "Cardella") is a corporation formed under the laws of the State of New Jersey, with its registered place of business at 70 South Orange Avenue, Livingston, New Jersey, 07039.

33.     Each Defendant is a "person" against whom a citizen suit action may be brought under 42 U.S.C. § 6972.

34.     Defendants' acts and omissions have adversely affected, are adversely affecting, and will continue to adversely affect, Plaintiffs' health, economic, recreational, aesthetic and environmental interests.

9

<u>FACTS COMMON TO ALL CLAIMS</u>

35.    NYS&W and the other Defendants own or operate the following four active solid waste management facilities (collectively, "the Facilities") in North Bergen, New Jersey:

(1) the 16th Street Facility (Block 446A, Lot 2);

(2) the 43rd Street Facility (Block 481, Lot 1);

(3) the 94th Street Facility (Block 480, Lots 1, 1c, 2, 6, 7, 8 & 9); and

(4) the 2480 Secaucus Road Facility (Block 446, Lot 7).

36.    A fifth Facility owned and operated by NYS&W, the 5800 Westside Avenue Facility (partial sections of Block 453A, Lots SC, 5A1, 7C and Block 481, Lot 1, in North Bergen) operates somewhat differently from the others and is described in more detail in the Fifth Claim below.

37.    The 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities generally operate in the same manner, as described in this section.

38.    Since at least November 15, 2004 to the present, the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities have accepted unbundled, mixed construction and demolition debris and other solid waste from commercial properties, construction sites and other sources.

39.    The solid waste accepted at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities includes concrete, asphalt, plaster, wallboard, roofing materials, leaded paint, cardboard, metal, insulation, plastic scrap, treated and untreated wood scrap  and other materials.

40.    The solid waste is dumped (or in industry usage, tipped) onto the ground and accumulates into large, open-air piles at the 16th Street, 43rd Street, 94th Street and 2480

Secaucus Road Facilities.

41.     Some of the waste piles at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities have been recorded to be over 40 feet high.

42.     Upon information and belief, the siting, design and construction of the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities have not been approved by the EPA, NJDEP, New Jersey Meadowlands Commission or any other governmental body.

43.     Upon information and belief, the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities do not have permits to operate as solid waste facilities from the EPA, NJDEP, New Jersey Meadowlands Commission or any other governmental body.

44.     There are no roofs over the waste piles at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities.

45.     The tipping surfaces at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities are enclosed on three sides by a combination of concrete block walls and stacked metal containers designed for intermodal shipping.

46.     The walls surrounding the tipping surfaces at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities are not watertight.

47.     The tipping surfaces at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities are open on at least one side.

48.     The tipping surfaces at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities lack leachate collection and treatment systems.

49.     The 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities do not have misting or other state of the art dust control systems.  Instead, operators from time to time soak down the waste piles with a hose connected to a fire hydrant.

11

50.    The solid waste remains in large, open-air piles until the Operators separate and sort it with excavators and heavy machinery.

51.    A portion of the waste is compacted and serves as a platform for excavators and other heavy equipment that are located on top of the waste piles in order to load the waste onto trains.

52.    The operators sort the solid waste into various categories of materials before loading it onto trains, by removing some materials and rejecting others as unacceptable.

53.    The removed and rejected materials include tires, appliances and other white goods, and metals.

54.    At least one Facility, the 16th Street Facility, ground up wood waste in an on-site tub grinding machine.

55.    The removed, rejected and segregated materials are stored at each Facility in open bins or open piles until the amount of each category is sufficient for carting to other disposal sites or solid waste facilities.

56.    Some of the removed and segregated materials are sold in the recyclables market for profit.

57.    The operators then lift the remaining solid waste with excavators or other heavy machinery into railroad car containers for shipment to the ultimate disposal facility.

58.    The solid waste management operations involve the grabbing of solid waste in open-jawed machinery, ripping the material from the waste pile, and lifting it through the air to a railcar.

59.    The railcars are not sealed, but are covered only with open mesh netting in an attempt to prevent some of the larger pieces from falling out.

12

60.    All of the Facilities operate in the open air and on concrete pads without the most basic and necessary environmental controls that are common in the solid waste industry, such as conducting operations within fully-enclosed buildings equipped with misting and other dust suppression systems, leachate collection devices and leachate treatment systems, .

61.    As a direct result of operations at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities, water from natural precipitation or from the fire hoses runs off the piles of solid waste and outside of the tipping surfaces, and from there either infiltrates into groundwater or runs off the site into surrounding neighborhoods, wetlands, or storm drains that ultimately discharge to nearby streams and water bodies.

62.    Also as a direct result of operations at the 16th Street, 43rd Street, 94th Street and 2480 Secaucus Road Facilities, dust, other airborne particles and litter from the solid waste piles drift into the surrounding wetlands, waterways and neighborhoods.

STATUTORY AND REGULATORY FRAMEWORK

63.    RCRA sets out a regulatory process for the handling of nonhazardous solid waste, and also contains minimum standards prohibiting "any solid waste management practice or disposal of solid waste or hazardous waste which constitutes open dumping of solid waste or hazardous waste...." 42 U.S.C. § 6945(a).

64.    The term "solid waste" includes "discarded material, including solid, liquid, semi-solid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations."  42 U.S.C. § 6903(27).

65.    The term "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be

13

emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

66. The statute further defines open dumping at disposal of solid and/or hazardous waste anywhere other than at a permitted sanitary landfill or hazardous waste disposal facility: an "open dump" is "any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under section 6944 of this title and which is not a facility for disposal of hazardous waste." 42 U.S.C. § 6903(14).

67. RCRA defines "facility" as "all contiguous land and structures, other appurtenances, and improvements on the land used for the disposal of solid waste." 40 C.F.R. § 257.2.

68. The prohibition on open dumping at 42 U.S.C. § 6945 is enforceable under the citizen suit provision at 42 U.S.C. § 6972.

69. Pursuant to its authority under 42 U.S.C. § 6907(a)(3), the EPA has promulgated additional minimum criteria to be used to identify the prohibited practice of open dumping. Under 40 C.F.R. § 257.1(a), a facility or practice that fails to satisfy the requirements of 40 C.F.R. §§ 257.1-257.30 constitutes an open dump or open dumping, respectively, and is prohibited by 42 U.S.C. § 6945.

FIRST CLAIM

(RCRA Open Dumping - 16th Street)

70.     Plaintiffs incorporate paragraphs 2 through 69 as though fully set forth herein.

71.     At all relevant times, NYS&W has been the owner of the 16th Street Facility.

72.     At all relevant times, NYS&W and/or Rail-Tech, L.L.C. have been the operators of the 16th Street Facility.

73.     The 16th Street Facility receives, stores, and processes materials that constitute solid waste within the meaning of 42 U.S.C. § 6903(27).

74.     The 16th Street Facility is directly underneath high-capacity electric wires.

75.     The 16th Street Facility is not a sanitary landfill that meets the criteria under 42 U.S.C. § 6944 or a facility for disposal of hazardous waste.

76.     NYS&W and Rail-Tech, L.L.C.'s operations at the 16th Street Facility have caused and continue to cause solid waste to enter the on-site and off-site environment, to emit into the air, or to discharge to water, and thus constitute disposal of solid wastes within the meaning of 42 U.S.C. § 6903(3).

77.     In addition, NYS&W and Rail-Tech, L.L.C.'s operations at the 16th Street Facility have caused and continue to cause a discharge of pollutants in violation of 40 C.F.R. § 257.3-3.

78.     For the foregoing reasons, Defendants NYS&W and Rail-Tech, L.L.C. have violated and continue to violate standards, regulations, conditions, requirements and/or prohibitions that have become effective pursuant to RCRA, including without limitation the substantive provisions banning open dumps in 42 U.S.C. § 6945(a) and the implementing regulations at 40 C.F.R. Part 257.

15

## SECOND CLAIM

(RCRA Open Dumping - 43rd Street)

79.    Plaintiffs incorporate paragraphs 2 through 78 as though fully set forth herein.

80.    At all relevant times, NYS&W has been the owner of the 43rd Street Facility.

81.    At all relevant times, NYS&W, Ontrack and/or Cardella have been the operators of the 43rd Street Facility.

82.    The 43rd Street Facility receives, stores, and processes materials that constitute solid waste within the meaning of 42 U.S.C. § 6903(27).

83.    The 43rd Street Facility is not a sanitary landfill that meets the criteria under 42 U.S.C. § 6944 or a facility for disposal of hazardous waste.

84.    NYSW, Ontrack and/or Cardella's operations at the 43rd Street Facility have caused and continue to cause solid waste to enter the on-site and off-site environment, to emit into the air, or to discharge to water, and thus constitute disposal of solid wastes within the meaning of 42 U.S.C. § 6903(3).

85.    In addition, NYS&W, Ontrack and/or Cardella's operations at the 43rd Street Facility have caused and continue to cause a discharge of pollutants in violation of 40 C.F.R. § 257.3-3.

86.    For the foregoing reasons, Defendants NYS&W and/or Ontrack, Cardella Trucking Co., or Cardella Waste Services of New Jersey, Inc. have violated and continue to violate standards, regulations, conditions, requirements and/or prohibitions that have become effective pursuant to RCRA, including without limitation the substantive provisions banning open dumps in 42 U.S.C. § 6945(a) and the implementing regulations at 40 C.F.R. Part 257.

THIRD CLAIM

(RCRA Open Dumping - 94th Street)

87.     Plaintiffs incorporate paragraphs 2 through 86 as though fully set forth herein.

88.     At all relevant times, Millennium and/or Crossroads have been the owners of the 94th Street Facility.

89.     At all relevant times, NYS&W has been the lessee of the 94th Street Facility.

90.     At all relevant times, NYS&W, Millennium and/or Crossroads have been the operators of the 94th Street Facility.

91.     The 94th Street Facility receives, stores, and processes materials that constitute solid waste within the meaning of 42 U.S.C. § 6903(27).

92.     The 94th Street Facility is not a sanitary landfill that meets the criteria under 42 U.S.C. § 6944 or a facility for disposal of hazardous waste.

93.     NYSW, Millennium and/or Crossroads's operations at the 94th Street Facility have caused and continue to cause solid waste to enter the on-site and off-site environment, to emit into the air, or to discharge to water, and thus constitute disposal of solid wastes within the meaning of 42 U.S.C. § 6903(3).

94.     In addition, NYS&W, Millennium and/or Crossroads's operations at the 94th Street Facility have caused and continue to cause a discharge of pollutants in violation of 40 C.F.R. § 257.3-3.

95.     For the foregoing reasons, Defendants NYS&W and/or Millennium and/or Crossroads have violated and continue to violate standards, regulations, conditions, requirements and/or prohibitions that have become effective pursuant to RCRA, including without limitation the substantive provisions banning open dumps in 42 U.S.C. § 6945(a) and the implementing

17

regulations at 40 C.F.R. Part 257.

FOURTH CLAIM

(RCRA Open Dumping - 2480 Secaucus Road)

96.     Plaintiffs incorporate paragraphs 2 through 95 as though fully set forth herein.

97.     At all relevant times, NYS&W has owned and operated the 2480 Secaucus Road facility.

98.     The 2480 Secaucus Road Facility receives, stores, and processes material that constitute solid waste within the meaning of 42 U.S.C. § 6903(27).

99.     The 2480 Secaucus Road Facility is not a sanitary landfill that meets the criteria under 42 U.S.C. § 6944 or a facility for disposal of hazardous waste.

100.    NYSW's operations at the 2480 Secaucus Road Facility have caused and continue to cause solid waste to enter the environment, to emit into the air, or to discharge to water, and thus constitute disposal of solid wastes within the meaning of 42 U.S.C. § 6903(3).

101.    In addition, NYSW's operations at the 2480 Secaucus Road Facility have caused and continue to cause a discharge of pollutants in violation of 40 C.F.R. § 257.3-3.

102.    For the foregoing reasons, Defendant NYS&W has violated and continues to violate standards, regulations, conditions, requirements and/or prohibitions that have become effective pursuant to RCRA, including without limitation the substantive provisions banning open dumps in 42 U.S.C. § 6945(a) and the implementing regulations at 40 C.F.R. Part 257.

FIFTH CLAIM

(RCRA Open Dumping - 5800 Westside Avenue)

103.    Plaintiffs incorporate paragraphs 2 through 102 as though fully set forth herein.

104.    At all relevant times, NYS&W has owned and operated the 5800 Westside Avenue Facility.

105.    The 5800 Westside Avenue Facility receives, stores, and processes contaminated, radioactive soils and other material that constitutes solid waste within the meaning of 42 U.S.C. § 6903(27).

106.    Upon information and belief, the 5800 Westside Avenue Facility does not have an operating permit from the EPA, NJDEP, New Jersey Meadowlands Commission or any other governmental body.

107.    The 5800 Westside Avenue Facility is not a sanitary landfill that meets the criteria under 42 U.S.C. § 6944 or a facility for disposal of hazardous waste.

108.    Upon information and belief, the design and construction of the 5800 Westside Avenue Facility has not been approved by the EPA, NJDEP, New Jersey Meadowlands Commission or any other governmental body.

109.    The 5800 Westside Avenue Facility consists of a ramp that leads to a partially enclosed structure.

110.    Trucks remain outside on the ramp and tilt their loads into a partially enclosed chute that leads to open rail cars.

111.    The railcars are enclosed in plastic wrap only when fully loaded.

112.    Upon information and belief, the 5800 Westside facility is not adequately constructed to prevent emissions of dust and other airborne particles from the contaminated soils

19

and other solid waste.

113.    NYS&W's operations at the 5800 Westside Avenue Facility have caused and continue to cause solid waste to enter the environment or to emit into the air, and thus constitute disposal of solid wastes within the meaning of 42 U.S.C. § 6903(3).

114.    For the foregoing reasons, Defendant NYS&W has violated and continues to violate standards, regulations, conditions, requirements and/or prohibitions that have become effective pursuant to RCRA, including without limitation the substantive provisions banning open dumps in 42 U.S.C. § 6945(a).

RELIEF REQUESTED

WHEREFORE, Plaintiffs seek judgment in their favor as follows:

A.    A declaration that Defendants are violating the prohibition of open dumping under 42 U.S.C. § 6945 at each Facility;

B.    An order directing Defendants immediately to cease the unlawful open dumping of solid waste at each Facility;

C.    An order permanently enjoining Defendants from operating each solid waste management Facility that does not conform to the requirements of RCRA, EPA regulations and other applicable regulations;

D.    An order directing Defendants to pay Plaintiffs' costs, fees, and expenses under RCRA, 42 U.S.C. § 6972(e), the Equal Access to Justice Act, 28 U.S.C. § 2412, and other applicable laws;

E.    Such other and further relief as the Court may deem just and proper.

Dated:     Newark, New Jersey
             October 3, 2005

                                Respectfully Submitted,

                                RUTGERS ENVIRONMENTAL LAW CLINIC

                                By:    s/ Carter H. Strickland, Jr.
                                       CARTER H. STRICKLAND, JR. (CS7672)

                                123 Washington Street
                                Newark, New Jersey 07102-3094
                                (973) 353-5695
                                cstrickland@kinoy.rutgers.edu

                                Attorneys for Plaintiffs

<u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, except that some of the underlying facts are at issue in <u>New York Susquehanna & Western RR, Inc. v. Bradley Campbell, Comm'r of the New Jersey Dep't of Envtl. Protection</u>, Dkt. No. 05-4010 (KSH).  That case, however, involves State solid waste regulations promulgated by the New Jersey Department of Environmental Protection and does not raise any of the Federal claims at issue in this litigation.

_____
CARTER H. STRICKLAND, JR. (CS7672)