<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

HACKENSACK RIVERKEEPER, INC., RARITAN
BAYKEEPER, INC. (d/b/a NY/NJ BAYKEEPER),
ANDREW WILLNER, and WILLIAM SHEEHAN,

        Plaintiffs,

      v.

DELAWARE OSTEGO CORP., NEW YORK
SUSQUEHANNA & WESTERN RAILWAY CORP.,
MILLENNIUM RESOURCE RECOVERY, LTD.,
CROSSROADS RECYCLING, INC., RAILTECH,
L.L.C., ONTRACK LOADING CO., INC. (d/b/a
ONTRACK LOADING CO., L.L.C. and LIBERTY
CONTRACTING), CARDELLA TRUCKING CO.,
INC., and CARDELLA WASTE SERVICES OF
NEW JERSEY, INC.

        Defendants.

CIVIL ACTION NO. 05-4806
(DRD)

<u>OPINION</u>

<u>Appearances</u>

RUTGERS ENVIRONMENTAL LAW CLINIC
Carter Strickland, Esq.
123 Washington Street
Newark, New Jersey 07102
*Attorneys for Plaintiffs*

WOLFF & SAMSON, P.C.
John A. McKinney, Jr. Esq.
One Boland Drive
Hackensack, New Jersey 07052
*Attorneys for Defendants Delaware Ostego Corp., and New York Susquehanna & Western
Railway Corp.*

WILENTZ GOLDMAN & SPITZER, P.A.
Francis X. Journick, Jr., Esq.
90 Woodbridge Center Drive

Suite 900 Box 10
Woodbridge, New Jersey 07095
*Attorneys for Defendants OnTrack Loading Co., Inc., Cardella Trucking Co., Inc., and Cardella Waste Services of New Jersey, Inc.*

### ***OPINION***

### DEBEVOISE, Senior District Judge

This is a citizen suit brought under the Resource Conservation & Recovery Act 42 U.S.C. §§ 6901-91 ("RCRA"). Plaintiffs are Hackensack Riverkeeper, Inc. ("Riverkeeper"), its executive director, William Sheehan ("Sheehan"), Raritan Baykeper, Inc. ("Baykeeper") and its executive director, Andrew Willner ("Willner"). The Defendants who have not been dismissed from the case are the New York Susquehanna and Western Railway Corporation ("NYS&W"), its parent company Delaware Ostego Corp. ("Delaware Ostego"), OnTrack Loading, Inc. ("OnTrack"), Cardella Trucking, Inc. and Cardella Waste Services of New Jersey, Inc. (the latter three Defendants being collectively referred to as "the Cardella Defendants") .

Plaintiffs allege generally that Defendants violated RCRA during the course of their ownership and/or operation of five separate transloading facilities in North Bergen, New Jersey. Plaintiffs allege that construction debris and other mixed waste is unloaded at the facilities and sits exposed and uncovered in large piles until being loaded on trains and delivered to out-of-state landfills. Plaintiffs contend that improper storage and handling of waste materials constitutes "open dumping" in violation of RCRA and that water runoff from these locations ultimately contaminates the Hackensack River and watershed. Plaintiffs seek a declaratory judgment, injunctive relief, and costs related to this suit. Defendants assert several affirmative defenses in their answers to the Complaint. Presently before the Court is Plaintiffs' motion for

2

summary judgment striking three of these affirmative defenses: i) RCRA in its entirety is

preempted by the 1995 Interstate Commerce Commission Termination Act ("ICCTA"); ii)

Plaintiffs failed to comply with the notice provisions that are a prerequisite to filing a RCRA

citizen's suit; and iii) Plaintiffs are without standing to prosecute the RCRA claim.  Defendants

NYS&W and Delaware Ostego cross-move for dismissal on the pleadings pursuant to Fed. R.

Civ. P. 12(c).  The Cardella Defendants join in this motion.  [1]


## I. *BACKGROUND*

Riverkeeper and Baykeeper are nonprofit environmental advocacy groups focused on

protecting New Jersey waterways from environmental contamination.  Both organizations are

members of the "Waterkeeper Alliance," an international organization of watershed advocates

working together to attain the "fishable and swimable" goals of the Clean Water Act, 33 U.S.C. §

1251, et seq.  Riverkeeper and Baykeeper advocate for strict controls of upland sources of

stormwater runoff and air emissions in furtherance of this goal.

Riverkeeper operates the Eco-Cruise, Eco-Walk and the Hackensack Riverkeeper Canoe

Project programs.  Eco-Cruises are boat tours on the Hackensack River and Meadowlands.  Eco-

Walks are guided field trips to unique habitat areas within the Hackensack River watershed.  The

Riverkeeper Canoe Project is a recreational canoe rental facility, which also hosts various

---

[1]In their brief in opposition to Plaintiffs' motion for partial summary judgment the
Cardella Defendants assert that their sole involvement in NYS&W's transfer operations was in
connection with the 43rd Street facility, that the 43rd Street facility no longer handles or is capable
of handling waste materials for transhipment by rail, and that the Cardella Defendants are no
longer engaged in NYS&W's operation at the facility.  The Cardella Defendants argue that the
Complaint should be dismissed as to them as moot.  Because they have not filed a formal motion
to dismiss on this ground, this contention will not be addressed.

canoeing events and competitions.  Riverkeeper's funding depends, in part, on donations and fees resulting from Eco-Cruise, Eco-Walk and Riverkeeper Canoe Project programs.

Sheehan and Willner are officers of Riverkeeper and Baykeeper (respectively).  They are self-described "avid naturalists" who engage in boating, fishing and bird-watching on the Hackensack River.  Their enjoyment of the Hackensack River and watershed has been inhibited by environmental contamination.

NYS&W is a regional railroad that operates more than 400 miles of track in New York, New Jersey, and Pennsylvania.  It is a wholly-owned subsidiary of Delaware Ostego, and owns and/or operates transloading facilities at the following five locations in North Bergen, New Jersey:[2]

(1) Block 446A, Lot 2 ("the 16th St. Facility");

(2) Block 481, Lot 1 ("the 43rd St. Facility");

(3) Block 480, Lots 1, 1c, 2, 6,7, 8 & 9 ("the 94th St. Facility");[3]

(4) Block 446, Lot 7 (the Secaucus Rd. Facility"); and

(5) Block 453A, Lots SC, 5A1, 7C and Block 481, Lot 1 ("the West Side Ave. Facility").

Cardella and OnTrack are trucking companies that are implicated only insofar as they are alleged to assist NYS&W in operating the 43rd St. Facility.

According to the Complaint, NYS&W receives construction and demolition debris at the 16th St., 43rd St., 94th St., and Secaucus Rd. transloading facilities from commercial properties and

---

[2]NYS&W and Delaware Ostego will be collectively referred to as "NYS&W."

[3]NYS&W leases the 94th St. Facility from Millennium Resource Recovery, Ltd., which has been dismissed from the case.

construction sites, and transports the debris, via railroad, to various out-of-state locations for disposal.  The debris collected at these facilities includes concrete, asphalt, plaster, wallboard, roofing materials, leaded paint, cardboard, metal, insulation, plastic scrap, treated and untreated wood scrap and other materials.

Plaintiffs allege that the debris is unloaded from trucks at the transloading facilities and dumped directly onto the ground, where it sits in large uncovered piles until being loaded onto rail cars for transport.  The debris is neither kept in watertight containers nor fully blockaded in, and there are no water collection systems employed at any of these sites.  NYS&W employees spray water on the debris periodically to reduce dust, and rainwater falls directly on the debris because it lies uncovered.  Plaintiffs further allege that water runoff, as well as drifting dust and litter from these activities contaminate the surrounding wetlands and neighborhoods, and that this contamination contributes to the polluted and unusable state of the River and watershed.

In addition to its activities at the first four sites, NYS&W also receives, stores, and processes contaminated, radioactive soils and other materials at the West Side Ave. Facility.  The West Side Ave. Facility consists of a ramp that leads to a partially enclosed structure.  Trucks remain outside on the ramp and tilt their loads into a partially enclosed chute that leads to open rail cars.  After being fully loaded, the rail cars are enclosed in plastic.  Plaintiffs allege that this facility is not adequately constructed to prevent emissions of dust and other airborne particles from the contaminated soils, and that NYS&W's operations have caused and continue to cause solid waste to enter the environment.

## II. *PROCEDURAL HISTORY*

On August 3, 2005, Plaintiffs sent a notice letter to Defendants stating that their "waste management operations and facilities at several transfer stations and other solid and hazardous waste management facilities in North Bergen New Jersey, violate[d] [RCRA]" and that Plaintiffs intended to file a citizen suit to abate those violations.  In their letter, Plaintiffs noted "[n]either the State of New Jersey nor the Federal [Environmental Protection Agency] has brought suit in court to abate the RCRA violations.  Accordingly, Prospective Plaintiffs hereby put you on notice of their intent to sue for abatement of those violations pursuant to Section 7002 of RCRA, 42 U.S.C. § 6972."  Plaintiffs forwarded copies of this letter to the National and Regional Administrators of the U.S. Environmental Protection Agency ("EPA"), the U.S. and New Jersey Attorneys General, and the Commissioner of the New Jersey Department of Environmental Protection ("NJDEP").

The notice letter read in pertinent part, as follows:

> We write on behalf of Raritan Baykeeper, Inc.(d/b/a/ NY/NJ Baykeeper), Hackensack Riverkeeper, Inc., Andrew Willner and William Shehan (together the "Prospective Plaintiffs") to notify you that your waste management operations and facilities at several transfer stations and other solid and hazardous waste management facilities in North Bergen, New Jersey, violate the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. ("RCRA"). Neither the State of New Jersey nor the Federal [EPA] has brought suit in court to abate the RCRA violations.  Accordingly, Prospective Plaintiffs hereby put you on notice of their intent to sue for abatement of those violations pursuant to Section 7002 of RCRA, 42 U.S.C. § 6972.
>
> **The Facilities**
>
> There are currently five waste management facilities in North Bergen, New Jersey that are serviced by [NYS&W].  NYS&W is a subsidiary of [Delaware Ostego].  These facilities (collectively "facilities") are referred to as follows:

...

RCRA allows citizens to bring suit "against any person... who is alleged to be in violation of any permit, standard, regulation, condition, prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)1(a)[.]

One of the applicable standards or prohibitions that has become effective pursuant to RCRA is the ban on "any solid waste management practice or disposal of solid waste... which constitutes open dumping..." 42 U.S.C. § 6945(a).

...

The Facilities are open dumps and violate RCRA, as they are not permitted sanitary landfills or facilities for the disposal of hazardous waste. Specifically, from at least November 15, 2004 to the present, the 16th Street , 43rd Street, 94th Street and 2480 Secaucus Road Facilities have accepted unbundled, mixed waste from commercial properties or construction sites. In general, the waste handled at the Facilities is construction and demolition debris, which may include treated and untreated wood scrap, concrete, asphalt, plaster, wallboard, roofing materials, cardboard, metal, insulation, plastic scrap and other materials. Waste is trucked from various sources to the Facilities, where it is tipped out on the ground into large open-air piles, stored, sorted into separate categories, compacted or bundled, and then loaded with heavy machinery into railroad car containers for shipment to the ultimate disposal facility. These operations are ongoing. From time to time, at least one facility, the 16th Street site facility, has had a wood chipper and has chipped and processed wood waste products.

All of these operations are occurring in the open air and on bare ground or asphalt pads without any controls. Accordingly, the operations are causing significant environmental hazards. Polluted stormwater runs off piles of waste with no quality controls, litter is carried into adjacent wetlands and airborne particulate matter is uncontrolled. Inspectors have observed piles of tires, paint cans, acetylene bottles, paint and hydraulic fluid in puddles on the ground, improper dispensing of fuel, and missing or inoperable fire extinguishers. The waste accumulates at the site for weeks in piles that are over 30 feet tall. Those characteristics in addition to the significant amount of wood and cardboard waste, create extreme fire

hazards.  This is particularly serious at the 16th Street facility, where the waste pile is located directly below high voltage power lines.

The 5800 Westside Avenue facility is operating as a direct truck to rail loading facility, where waste is tipped directly to rail cars from an elevated ramp.  That facility is also handling soils and other solid and hazardous waste materials associated with environmental site remediation projects.

Due to the lack of inspections of the incoming waste and missing manifests, there could be hazardous waste handled at these Facilities. Indeed, on July 6 and 7, 2005, local health and fire officials responded to a citizen complaint about a disturbing odor emitting from the 5800 Westside Avenue facility.  They determined that the odor came from tanks used for transporting phosphorus pentasulfide, which is ignitable and explosive upon contact with water, reacts with water to form hydrogen sulfide, sulfur and phosphoric acid, gives off toxic fumes in a fire, is hazardous to the environment (particularly to aquatic organisms) and is a listed hazardous material.  Phosphorus pentasulfide is a hazardous waste within the meaning ascribed to that term by RCRA.  Inspectors found varying numbers (between 40 and 80) of full and empty containers on the site.  The tanks hold 7,000 pounds of phosphorus pentasulfide each.  The 5800 Westside Avenue facility lacks patch/ cleanup crews onsite, safety protocol procedures and a hazardous materials training officer.  The gates to the facility were left open and there was no security personnel or site access restrictions when inspectors went to the site; on July 6, 2005, local fire department personnel were able to drive the entire length of the yard without being approached once.  During a later visit, reporters were able to walk through the yard's open gate and inspect the containers.  On July, 6, 2005, local police officers observed three large tanker cars filled with chlorine being stored on tracks in the yard.  Inspectors did not find any manifests of the waste.
...

On October 4, 2005, Plaintiffs filed the Complaint in the instant action, which seeks to enjoin

Defendants' conduct as violative of RCRA.[4]

_____

        [4]The Complaint in the instant action originally listed, as additional Defendants, Crossroads Recycling, Inc., Millennium Resource Recovery, Ltd., and Railtech, L.L.C.  Those Defendants have been dismissed on stipulation of the parties.

On October 18, 2005, the Cardella Defendants answered the Complaint.  In their answer, they conceded that they have delivered construction debris to the 43rd St. Facility, that there is no roof at that facility, and that water is used to control dust from the debris delivered to the facility. They further conceded that OnTrack performs railroad car loading operations at the 43rd St. Facility.  However, they deny having violated any environmental laws.  In their answer, the Cardella Defendants asserted several affirmative defenses.  The following are relevant to the instant motions: (i) the court lacks jurisdiction over this matter (Second Affirmative Defense); (ii) Plaintiffs are precluded from bringing this action by 42 U.S.C. § 6972 (Third Affirmative Defense); and (iii) Plaintiffs have suffered no injury or damages as a result of the alleged actions or inactions (Tenth Affirmative Defense).

On November 16, 2005, NYS&W answered the Complaint.[5]  In its answer, NYS&W concedes that it owns and/or operates the transloading facilities in question, and receives/ transports the type of construction debris alleged in the Complaint.  However, NYS&W denies that the transloading activities violate any environmental regulations.  In its answer, NYS&W asserted several affirmative defenses.  The following are relevant to the instant motions: (i) the Complaint should be dismissed because NJDEP, via an earlier filed action NYS&W has commenced, is diligently prosecuting an action to redress the violations alleged by Plaintiffs in the Complaint (Second Affirmative Defense); (ii) the Complaint should be dismissed because Plaintiffs failed to comply with the RCRA notice provisions set forth at 42 U.S.C. §§ 6972(b)(1)(A), (b)(2)(A) and 40 C.F.R. § 254.3 (Third Affirmative Defense); (iii) the Complaint

---

[5]Although the parties stipulated to consolidate the NYS&W Action and Instant Action, the court, in its discretion, declined to do so.

should be dismissed because Plaintiffs are without standing to prosecute the RCRA claim (Seventh Affirmative Defense); and (iv) The Complaint should be dismissed because RCRA is displaced and preempted by ICCTA (including, without limitation, 49 U.S.C. §§ 10102, 10501) (Eighth Affirmative Defense).

Presently before the Court are: (i) Plaintiffs' motion pursuant to Fed. R. Civ. P. 56, and 12(f) for partial summary judgment and (ii) NYS&W's cross-motion (in which the Cardella Defendants join) for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

### III. *THE NYS&W ACTION*

A critical issue in this case is whether an action captioned NYS&W v. Jackson, et al., Docket No. 05-4010(KSH) ("the NYS&W Action"), stands as a bar to the instant citizens' suit.

In 2005 NJDEP and the New Jersey Meadowlands Commission ("NJMC") sought to enforce against NYS&W, the State's Intermodal Regulations, N.J.A.C. 7:26-2D.1 et seq., and other regulations that purport to regulate the design, construction and operation of rail transload facilities at which railroads transload bulk materials (including construction and demolition material) between trucks and rail cars as part of the interstate transportation of those materials.

On July 26, 2005, the NJDEP and the NJMC (collectively, "the State Parties") issued an Administrative Order and Notice of Civil Administrative Penalty Assessment ("AONOCAPA"), assessing fines against NYS&W for violating the regulations.  The AONOCAPA ordered NYS&W to modify the design and operation of the above listed transload facilities in order to bring them into conformance with the regulations.

On August 16, 2005, NYS&W filed the Complaint in the NYS&W Action, seeking to enjoin enforcement of the regulations and the AONOCAPA.  In its Complaint, NYS&W alleged

10

that the regulations: (i) are preempted ICCTA, 49 U.S.C. § 10501(b); (ii) violate the Commerce

Clause; and (iii) are preempted by the federal Hazardous Materials Transportation Act, 49 U.S.C.

§ 5125(a).  On September 21, 2005, the State Parties notified NYS&W that they intended to file

a counterclaim in the NYS&W Action alleging violations of RCRA upon expiration of the

statutorily required 60-day notice period.   On September 26, 2005, the State Parties filed a

counterclaim and third party complaint in the NYS&W Action seeking to enjoin NYS&W from

operating its transloading facilities unless they did so in compliance with the New Jersey

Intermodal Regulations, N.J.A.C. 7:26-2D.1 et seq. ("the State Complaint").  Paragraph 3 of the

counterclaim and third-party complaint stated:

> Additionally, NJDEP and NJMC intend to bring a civil action
> pursuant to the Resource Conservation and Recovery Act ("RCRA"),
> 42 U.S.C. § 6901 et seq., to enjoin operation of the five facilities for
> violations of RCRA's prohibition against open dumping, 42 U.S.C.
> § 6945.  NJDEP and NJMC sent notice of the RCRA violations to
> NYS&W and Third-Party Defendants on September 21, 2005 via
> certified mail, and intend to include RCRA claims in this litigation
> through supplemental pleadings once the 60 day notice period
> required under RCRA has expired.

The State Parties' September 21 RCRA notice read:

> The State of New Jersey is hereby notifying the New York
> Susquehanna and Western Railway Corporation ("NYS&W"),
> Delaware Ostego Corp., MHF Logistical Solutions, Inc., Slane Rail
> Transport, LLC, Precise Construction Contracting, Inc., Rail-Tech,
> LLC, Hudson-National, LLC, Cardella Trucking, Co., Inc., OnTrack
> Loading Company, Inc., Millennium Resource Recovery, Ltd., 94th
> Street Rail transfer, LLC, Scott Excavating, LLC, Susquehanna Bulk
> Systems, and Crossroads Recycling, Inc. (collectively, "the
> companies") as well as the Administrator of the [EPA] and the
> Administrator for EPA Region 2, that the companies have violated
> [RCRA] by undertaking actions that constitute the open dumping of
> solid waste or hazardous waste.

....

Each of [the five North Bergen facilities] is in violation of the open dumping prohibition in the Act as solid waste is disposed of at these facilities which are not landfills under section 6944 of the Act or facilities for disposal of hazardous waste.  Two types of bulk materials that move through the facilities are debris from construction and demolition operations ("C&D materials"), and bulk waste shipments from environmental site cleanups.  <u>See</u> NYS&W's Compl. for Inj. and Dec. Relief ¶ 24, Filed August 15, 2005 (D.N.J.).  These two categories of materials are both clearly within the definition of solid waste under the Act.(footnote omitted).

Disposal under the Act is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).  We are informed and believe that solid waste has been placed upon the facilities listed above so that the waste and/or its constituents may enter the environment.  The disposal practices employed at the facilities which allow the waste and/or its constituents to enter the environment include:

1.  Failure to adequately enclose the facilities within buildings meeting the requirements of the Uniform Construction Code at all Sites;
2.  Failure to use a concrete tipping floor or ramp at all Sites to contain and channel wastewater to sanitary sewer connections or holding tanks;
3.  Failure to take adequate precautions with wastewater disposal at all Sites;
4.  Failure to effectively control dust at all Sites;
5.  Failure to regularly clean Sites 2,3,4, and 5;
6.  Failure to effectively control odors and/or the emission of air contaminants at Sites 2,3,4, and 5;
7.  Failure to have concrete or asphalt paving at unloading areas and/or on-site roadways in Sites 3 and 5;
8.  Failure to move solid waste within ten days at Site 4;

These Failures have led to significant environmental and public health hazards as they allow the waste handled by the facilities and/or its constituents to enter the environment, thereby meeting the

> definition of "disposal" under the Act.  Since none of the facilities are
> permitted sanitary landfills or facilities for disposal of hazardous
> waste as described in the Act, they are open dumps in violation of
> RCRA.
>
> ... The State of New Jersey intends to commence a civil action
> under section 6972 to address the companies' violation of the open
> dumping prohibition in the Act, and is willing to discuss settlement
> of this matter that would achieve the goal of protection of public
> health and the environment....

The 60-day waiting period expired on or about November 25, 2005.  The State parties did not thereafter file an actual (as distinguished from an "intended") RCRA complaint.  Plaintiffs, of course, had filed their Complaint in the instant RCRA action on October 4, 2005.

### *DISCUSSION*

**A. Summary Judgment Standard**

Plaintiffs attack by way of a motion for partial summary judgment, three affirmative defenses which, if established, would deprive the court of jurisdiction to hear the case: i) ICCTA preempts RCRA; ii) Plaintiffs failed to comply with RCRA's notice provisions; and iii) Plaintiffs are without standing to prosecute their RCRA claim.

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Rule 56(c) imposes a burden on the moving party simply to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has met this burden, the burden then shifts to the non-moving party.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita

13

Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Moreover, the nonmoving party

may not simply "replace conclusory allegations of the complaint or answer with conclusory

allegations of an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Rather, he must "set forth specific

facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

At the summary judgment stage, the court's function is not to weigh the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial.  Anderson, 477 U.S. at 249.  The mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment.  Id. at

247.  In determining whether there exists a material issue of disputed fact, however, the facts and

the inferences to be drawn from the facts are to be viewed in the light most favorable to the

nonmoving party.  Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).


**B. Preemption**

NYS&W's Eighth Affirmative Defense reads: "The Complaint should be dismissed

because as it seeks to apply RCRA, RCRA is displaced and preempted by the Interstate

Commerce Act, as amended (including without limitation 49 U.S.C. §§ 10102, 10501)."  In its

memorandum in response to Plaintiffs' motion for summary judgment NYS&W clarifies its

defense, giving it a less sweeping import.  "Contrary to Plaintiffs' suggestion, NYS&W has not

asserted, and will not assert, that ICCTA wholly "pre-empts" all provisions of RCRA. Instead,

NYS&W's position is far more modest – to the extent Plaintiffs' claim attempts to stretch

RCRA's provisions to unreasonably interfere with railroad operations, that portion of their claim,

14

as applied, would be displaced by ICCTA."  (NYS&W Br. 27).

The statutory sections to which NYS&W refers are part of the 1995 amendments known as the Interstate Commerce Commission Termination Act, Pubs. 104-88, 109 Stat. 803 (Dec. 29, 1995), which substantially overhauled the Interstate Commerce Act and its regulation of rail transportation (Part A, Subtitle IV, Title 49), motor carriers and others (Part B) and pipeline carriers (Part C).  ICCTA abolished the Interstate Commerce Commission ("ICC") and created the Surface Transportation Board ("STB"), an independent agency within the Department of Transportation charged with the exclusive jurisdiction over "transportation by rail carriers." 49 U.S.C. § 10501(b).  ICCTA provides in relevant part:

> (b) The jurisdiction of the Board over –
>
> > (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> >
> > (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

ICCTA defines "transportation" as including:

> > (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and

15

(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property.

49 U.S.C. § 10102(9). NYS&W is a "rail carrier" under ICCTA. As stated in J.P. Rail v. New Jersey Pinelands Commission, No. 05-2755 (D.N.J. Dec. 22, 2005 at *28):

> ICCTA vests the STB with exclusive jurisdiction over "transportation by rail carrier," "and its regulation of rail carriers preempts state regulation with respect to rail transportation." Hi Tech Trans, LLC v. State of New Jersey, 382 F.3d 295 (3d Cir. 2004) (citing 49 U.S.C. § 10501(b)). "Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing] or 'govern[ing]' rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." Florida East Coast Ry. v. City of West Palm Beach, 266 F.3d 1324, 1331 (11th Cir. 2001) (citations omitted.) In other words, exclusive STB jurisdiction "is limited to remedies with respect to rail regulation – not State and Federal law generally." H.R. Rep. 104-422, reprinted in 1995 U.S.C.C.A.N. 850, 852.

In this Circuit at least, it seems evident that environmental regulation of transloading of construction and demolition waste for shipment by railroad is not preempted by ICCTA. That is the holding of J.P. Rail, which followed the lead of the Court of Appeals decision in Hi Tech.

> [T]he most cursory analysis of Hi Tech's operations reveals that its facility does not involve "transportation by rail carrier." The most it involves is transportation *"to* rail carrier." Trucks bring [construction and demolition] debris from construction sites to Hi Tech's facility where the debris is dumped into Hi Tech's hoppers. Hi Tech then "transloads," the [construction and demolition] debris from its hoppers into rail cars owned and operated by... the railroad. It is [the railroad] that then *transports* the [construction and demolition] debris "by rail" to out of state disposal facilities.

382 F.3d at 308.

There is no dispute of material fact about the activities that NYS&W and other

16

Defendants conduct or once conducted at the transloading facilities.  NYS&W's own Statement of Undisputed Facts establishes that.  The relief that Plaintiffs seek is also apparent.  The transloading activities do not involve "transportation by rail carriers," and the relief sought would not interfere with such transportation.  This action is not preempted by ICCTA.  Plaintiffs' motion for summary judgment striking all preemption defenses will be granted.

## C. Standing

Plaintiffs assert both individual and organizational standing to bring this action, asserting that they have suffered an injury that is fairly traceable to Defendants' conduct and is capable of being fairly redressed by a favorable decision from the court.  Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs. Inc., 528 U.S. 167, 180-181 (2000).

In the Complaint and in their affidavits Willner and Sheehan, "officers, directors, advisors, trustees, employees and supporters" of Baykeeper and Riverkeeper, describe how their recreational activities on the Hackensack River and its environs are affected by pollution and the basis for their belief that Defendants' acts and omissions have contributed to the pollution.  Not only are the recreational activities and aesthetic interests of the individual Plaintiffs affected by pollution, but, as they are employees of Baykeeper and Riverkeeper, their economic interests are affected as well.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 520-61 (1992).

To establish that the injury is fairly traceable to Defendants' conduct, Plaintiffs must show that there is a "substantial likelihood" that the Defendants' activities caused their injuries.  Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 79 (1978).  Sheehan and Willner rely on their observations about the escape of debris and runoff from the facilities and upon governmental records.  These runoffs and emissions are in the vicinity of the wetlands

17

and tributaries of the Hackensack River.  If this in fact is taking place, Sheehan's and Willner's injuries are likely to be redressed by injunctive relief, shutting down the facilities until Defendants have installed proper controls to prevent emissions into the environment.

Turning to the question of the standing of Riverkeeper and Baykeeper:

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 343 (1977).  It is apparent that the interests Plaintiffs seek to protect are germane to the purpose of Riverkeeper and Baykeeper and that neither the claim asserted nor the relief requested requires the participation of individual members in this lawsuit.

Riverkeeper has submitted declarations of two of its members, and Baykeeper has submitted a declaration of a member and an associational member of Baykeeper.  Each declarant has suffered the same kinds of recreational and aesthetic injuries as Willner and Sheehan.  Thus if Willner and Sheehan have standing, the declarant members would also have standing to bring this action.

Defendants do not challenge Plaintiffs' contention that the kinds of recreational, aesthetic and economic injuries they have suffered are a sufficient basis for standing if the other conditions of standing are met, namely, that the injuries are fairly traceable to Defendants' conduct and that the injuries are capable of being fairly redressed by a favorable decision.

In order to establish an injury-in-fact, a Plaintiff must first demonstrate it has suffered "an

18

invasion of a legally protected interest which is concrete and particularized," that is "actual or imminent, not conjectural or hypothetical." Laidlaw Envt'l Svcs., 528 U.S. at 180.  The Hackensack River and its tributaries have many possible sources of pollution.  Plaintiffs' declarations contain speculations that Defendants' activities contribute to this pollution, and they show that there are runoffs and air emissions from the facilities.  This may well be sufficient to preclude a summary judgment that they lack standing, but it is insufficient to establish that no factual issue exists as to the second and third requirements to support standing.

Plaintiffs assert that Defendants have offered no evidence to rebut Plaintiffs' declarations in support of standing and that, consequently, their motion for summary judgment on this issue should be granted.  Even though in some circumstances courts have found standing to exist on the basis of affidavits alone, e.g., Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64 (3d Cir. 1990), this is not such a case.  The evidence supporting a relationship between the challenged activities and Plaintiffs' injuries is insufficiently conclusive to support Plaintiffs' motion for summary judgment.  Defendants properly rely upon Fed. R. Civ. P. 56(f).  The parties should have an opportunity to pursue the factual issues through discovery.

Plaintiffs' motion for summary judgment in their favor on the affirmative defense of lack of standing will be denied without prejudice to renewal of the motion after discovery of the issue has been taken.

**D. Notice**

NYS&W's Third Affirmative Defense reads: "The Complaint should be dismissed because Plaintiffs failed to comply with the notice provisions set forth at 42 U.S.C. §§ 6972(b)(1)(A),

19

(b)(2)(A) and 40 C.F.R. § 254.3." Plaintiffs move for summary judgment on this defense.

Under 42 U.S.C. § 6972(b)(A) a citizen suit alleging a RCRA violation may not be commenced until 60 days after notice of the purported violation is given to the Administrator of the United States Environmental Protection Agency, the State in which the alleged violation occurred and the alleged violator. A 60-day waiting period after the notice is served is required before a citizen's suit may be commenced. The statutory notice requirements are "mandatory conditions precedent to commencing suit under the RCRA citizen suit provision." Hallstrom v. Tillamook County, 493 U.S. 20, 31 (1989).

The manner by which such notice must be given is governed by EPA regulations, which provide:

> Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under this Act shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. §254.3(a). NYS&W contends that Plaintiffs' RCRA notice, though timely, is insufficient because, although it cited general provisions of RCRA and referenced the "open dump" standard, it failed to specify how Defendants' alleged conduct at the facilities allegedly violated specific RCRA regulations. By way of contrast the Complaint in this action identifies specific activities at each site that are alleged to violate specific regulatory provisions. NYS&W cites a number of cases

in other circuits that hold that notices were deficient because they did not refer to specific RCRA sections allegedly violated.

The Plaintiffs' notice set forth in considerable detail the actions and inactions in which Defendants were alleged to have engaged.  It advised Defendants that Plaintiffs charged that their waste management operations and facilities at five specific transfer stations and elsewhere violated RCRA.  The notice cited RCRA's ban on "any solid waste management practice or disposal of solid waste... which constitutes open dumping... 42 U.S.C. § 6945(a)."  The notice described in considerable detail the alleged unlawful activities that took place from at least November 15, 2004 to the present at the 16th Street, 94th Street and 2480 Secaucus Road facilities.  The notice described the alleged unlawful activities conducted at the 5800 Westside Avenue facility.

The Court of Appeals for the Third Circuit has held that the content requirements for the notice letter are not to be construed as strictly as the timing requirements.  Hawksbill Sea Turtle v. Federal Emergency Management Agency, 126 F.3d 461 (3d Cir. 1997); Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc., 50 F.3d 1239 (3d Cir. 1995); see also Two Rivers Terminal, L.P. v. Chevron USA, Inc., 96 F.Supp.2d 426 (M.D.Pa.2000).  Although those cases did not arise under RCRA, the notice regulations in Hawksbill and Hercules were similar to 40 C.F.R. § 254.3(a) and the reasoning of those cases is applicable here.  The information contained in the Plaintiffs' notice was sufficient to permit the recipient to identify the kind of RCRA violations being charged.  That is sufficient compliance with RCRA's notice requirement to permit prosecution of this action.

There are no factual issues implicated in Plaintiffs' motion for partial summary judgment striking all affirmative defenses asserting that Plaintiffs failed to give notice as required by RCRA,

and the motion will be granted.  To the extent that NYS&W moves to dismiss the Complaint on the ground that notice was inadequate, the motion will be denied.

**E. Diligent Prosecution Bar**

NYS&W moves to dismiss this action for lack of jurisdiction.  This is a citizen suit brought under 42 U.S.C. § 6972(a)(1)(A) and NYS&W contends that it is precluded by 42 U.S.C. § 6972(b)(1(B).  That provision expressly prohibits such actions where a state agency is diligently pursuing an enforcement action:

> **(b) Actions prohibited**
>
> **(1)**  No action may be commenced under subsection (a)(1)(A) of this section--
> ...
> **(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.**

NYS&W argues that NJDEP's and NJMC's counterclaim and third-party Complaint ("the State Complaint") in the NYS&W Action is addressed to precisely the same environmental conditions and seeks the same relief as the Complaint in the Instant Action and therefore is barred by § 6972(b)(1)(B).  Plaintiffs on the other hand, contend that even though there is significant overlap and even though the State is diligently prosecuting its claim, the RCRA bar does not apply because the State is not seeking compliance with a RCRA permit, standard, regulation, condition, requirement, prohibition, or order.

NYS&W is clearly correct that there is substantial overlap between the allegations of the complaints in the two actions.  It argues that the courts generally determine whether a citizen suit is prohibited by the diligent prosecution bar by comparing the government's pleadings with those filed by the private citizen in the subsequent action, citing Connecticut Fund For Environment v. Contract Plating Co., Inc., 631 F.Supp. 1291 (D.Conn. 1986).  Paragraph 77 of the State Complaint alleges that the Defendants have violated New Jersey law by engaging in specific acts that are the functional equivalent of the acts that Plaintiffs allege in their Complaint constitute "open dumping" and "disposal" prohibited by RCRA (see Plaintiffs' Complaint ¶¶ 63-65 and 70-114).

The same five facilities are at issue; the conduct and activities complained of and the alleged environmental harm caused by these activities are all essentially the same as alleged in each of the complaints.  The Complaint in the instant action seeks the same relief as is sought in the State Complaint - an injunction closing the five rail trans-loading facilities in North Bergen and prohibiting NYS&W and other parties from operating those facilities.

Among the cases that NYS&W relies upon is Hudson Riverkeeper Fund v. Harbor at Hastings Assoc., 917 F. Supp. 251 (S.D.N.Y. 1996), which applied the RCRA diligent prosecution bar to dismiss a citizen suit because of state government enforcement action that sought to "correct the same environmental conditions" that were the subject of the citizens suit. NYS&W also relies on a similar application of the bar in Northern California River Watch v. Humboldt Petroleum, Inc., 2000 WL 1639524, at *2 (N.D. Cal. Oct. 30, 2000).

Plaintiffs concede that the State is diligently prosecuting its counterclaims against NYS&W and its third-party complaint against the other entities in the NYS&W Action

23

(collectively the "State Complaint"), <u>citing</u> <u>Conn. Fund for the Env't v. Contract Plating Co.,</u> <u>Inc.</u>, 631 F. Supp. at 2193. Plaintiffs note that as the first step in a two-part inquiry: "the court must determine whether any suit by the state (or the EPA Administrator) to enforce the same ['permit, standard, regulation, condition, requirement, prohibition, or order'] was pending in federal or state court on the date that the citizens' suit was commenced."

All of the State's claims are pursuant to New Jersey's Intermodal Regulations at N.J.A.C. 7:26-2D.1 et seq., or other state regulations. It is true that on September 21, 2005 the State Parties notified NYS&W that they intended to file a counterclaim in the NYS&W Action alleging violations of RCRA upon the expiration of the 60-day notice period and that on September 26, 2005 the State Parties filed the counterclaims and third party complaint which included an "Intended Count 3" seeking "Declaratory/ Injunctive Relief-RCRA Prohibition Against Open Dumping." The 60-day notice period had not ended, and consequently Intended Count 3 did not qualify as a suit to enforce a RCRA requirement. The State never followed up on its intent to file a RCRA complaint and has announced that it no longer intends to do so. NYS&W argues that the State's negative intention somehow brings the RCRA bar into play, but that contention is unsustainable.

The issue comes down to the question whether the State Complaint, which does not assert a RCRA claim but which does address substantially the same conditions that are the subject of Plaintiffs' RCRA Complaint, stands as a bar to Plaintiffs' action.

Applying its plain meaning, the statutory bar provision does not preclude Plaintiffs' RCRA action. The interpretation of a statute must begin with the words of the statute itself. <u>Watt v. Alaska</u>, 451 U.S. 259, 265 (1981). Citizen suits under 42 U.S.C. § 6972(a)(1)(A) are

precluded by the diligent prosecution bar only if:

> **the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with <u>such permit, standard, regulation, condition, requirement, prohibition, or order</u>.**

42 U.S.C. § 6972 (b)(1)(B) (emphasis added).  NYS&W suggests that the word "condition" requires that the bar be imposed if the two actions address the same environmental conditions, as in the present case.  In the context in which it is used, the word "condition" cannot have that meaning.  It would be totally out of place when used with "permit," "standard," "regulation," "requirement," "prohibition," and "order."

The term "such" limits preclusive actions to those asserting a "permit, standard, regulation, condition, requirement, prohibition, or order" under RCRA as provided in 42 U.S.C. § 6972(a)(1)(A), or similar requirements under a state program that is formally approved to operate "in lieu of the federal RCRA Subchapter III hazardous waste program under 42 U.S.C. § 6926(b)."  <u>Glazer v. American Ecology Environmental Services Corp.</u>, 894 F.Supp. 1029 (E.D.Tex.,1995); <u>Cox v. City of Dallas, Texas</u> 1999 WL 33756552 (N.D.Tex. Aug. 4,1999); <u>Fallowfield Development Corp. v. Strunk</u>, 1990 WL 52745 (E.D.Pa. Apr. 23, 1990).  The circumstances and issues addressed in <u>Middlesex County Bd. of Chosen Freeholders v. NJDEP</u>, 645 F. Supp. 715 (D.N.J. 1986), upon which Plaintiffs rely, are so different from those in the present case that it is not compelling support for Plaintiffs' position.

The language of the RCRA bar provision is to be contrasted to the analogous bar sections of the Clean Water Act.  <u>See</u> 33 U.S.C. § 1319(g)(6)(A)(ii) (diligent prosecution bar triggered by

any "State law comparable to [the Clean Water Act])."  NYS&W's contention might be sustainable if that provision were applicable here.

NYS&W relies upon Hudson Riverkeeper Fund v. Harbor at Hastings Assoc., 917 F. Supp. 251 (S.D.N.Y. 1996).  The reasoning of that case is not persuasive.  The court in Hudson Riverkeeper recognized that the language of RCRA "seems to suggest that any state action, to qualify as barring the RCRA action, must be brought under the act itself." Id. at 256.  The earlier state complaint at issue, however, did not specify the statutory source of the cause of action and simply set out the underlying facts and the relief sought.  The court, therefore, found that "it is impossible to say that any lawsuit arising out of an occurrence which implicates the RCRA is not being brought pursuant to the statute."  Id. at 255 (emphasis in original).  The court ruled that the claims asserted in state court were "implied" RCRA claims upon the theory that the state court is obliged to convert ambiguous pleadings to federal claims.

This theory is untenable.  Further, in the instant case, unlike Hudson Riverkeeper, the State has asserted only violations of its own solid waste regulations that do not operate "in lieu of" RCRA, and it has specifically disavowed any intention of pursuing a RCRA claim.  Mejdreck v. Lockformer Co., 2002 WL 1838141, *10 (N.D.Ill.Aug. 12, ,2002), aff'd 319 F.3d 910 (7th Cir. 2003).

NYS&W contends that the statutory objective of avoiding duplicative litigation requires construction of § 6972(b)(1)(B) so as to bar Plaintiffs' action, even though such an interpretation seems counter to the plain meaning of the statute.  The opposing policy argument is that Congress intended citizens' suits to be "handled liberally, because they perform an important public function..." Proffitt v. Municipal Authority of the Borough of Morrisville, 716 F. Supp.

837, 844 (E.D. Pa. 1989), <u>aff'd</u>, 897 F.2d 523 (3d Cir. 1990) (stating in addition that "Citizen

suits are a proven enforcement tool. They operate as Congress intended to both spur and

supplement [] government actions. They have deterred violators and achieved significant

compliance gains.")(citation omitted to legislative history quoted).

      Here, where the State is seeking to enforce its own regulations and specifically disavows

enforcement of RCRA regulations, § 6972(b)(1)(B) does not bar a Plaintiffs' citizen suit even

though it addressed many of the same activities as the State Complaint addresses.   NYS&W's

policy concerns are outweighed by the public interest served by such suits.   They certainly are not

sufficiently strong to overcome the plain language of the statute.   The existence of parallel

actions in circumstances such as this need not cause undue concern.   It is to be expected that the

parties, and if not the parties, the two courts involved, would act to avoid duplicative discovery.

It may well be that eventually the State will secure all the relief that the Plaintiffs in the instant

action seek.   If so, a motion to dismiss the instant action on mootness grounds might be in order.

Until such an event occurs, Plaintiffs are entitled to pursue their RCRA claims.

      To the extent that NYS&W's motion to dismiss relies on the diligent prosecution bar it

will be denied.

**F. <u>Failure to State a Claim</u>**

      NYS&W moves to dismiss the Complaint on the pleadings pursuant to Fed. R. Civ. P.

12(c) on the additional ground that Plaintiffs' claims are not cognizable under the RCRA Citizen

suit provision.

      A defendant may move to dismiss a complaint or parts of a complaint before or after

filing an answer.  See Fed. R. Civ. P. 12(b)(6) and (c).  A motion made before an answer is filed is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  A motion made after an answer is filed is a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

        The standard under which the Court must analyze the plaintiffs' complaint and the defendants' arguments on a Rule 12(c) motion for judgment on the pleadings is the same as the standard on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Fed. R. Civ. P. 12(h)(2); see also Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir.1991); Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002, 1006 (3d Cir.), cert. denied, 502 U.S. 909 (1991).

        Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73.  Allegations contained in the complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and Plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations."  Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  However, the plaintiff is required to make factual allegations and cannot rely on conclusory recitations of law.  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

        NYS&W asserts that as a matter of law, Plaintiffs' claims are not cognizable under the citizen suit provision pursuant to which they bring this action, RCRA § 7002(a), 42 U.S.C. § 6972(a).  It further contends that the statute, EPA's authoritative implementing regulations, and relevant case law demonstrate that Plaintiffs' claims of "discharges" or "emissions" from the NYS&W transloading facilities may be brought - if at all - under the Clean Water Act (33 U.S.C.

28

§ 1251 et seq.) or the Clean Air Act (42 U.S.C. § 7401, et seq.), but may not be maintained under RCRA.  Because Plaintiffs limited their allegations to RCRA, even assuming all of Plaintiffs' factual allegations are true, their Complaint, according to NYS&W, should be dismissed because it fails to allege any RCRA violations, a defect that cannot be remedied by new allegations asserted for the first time in their memoranda and declarations.

RCRA, 42 U.S.C. §§ 6901-91, is a comprehensive environmental statute that establishes a cradle-to-grave system for regulating the disposal of solid and  hazardous waste.  United States v. ILCO, Inc., 996 F.2d 1126, 1130 (11th Cir. 1993).  42 U.S.C. § 6945(a) prohibits any solid waste management practice or disposal of solid waste or hazardous waste constituting **open dumping**.  RCRA defines the term **"open dump"** as any facility or site where solid waste is disposed of which is not a sanitary landfill, which meets the criteria promulgated under section 6944 of this title and which is not a facility for disposal of hazardous waste. [6]  **"Solid waste"** is any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities.  42 U.S.C. § 6903 (27).  **"Disposal"** means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any

---

[6] 42 U.S.C.A. § 6944(a) grants the EPA Administrator the authority to promulgate regulations containing criteria for determining which facilities shall be classified as sanitary landfills and which shall be classified as open dumps within the meaning of this chapter.  At a minimum, such criteria shall provide that a facility may be classified as a sanitary landfill and not an open dump only if there is no reasonable probability of adverse effects on health or the environment from disposal of solid waste at such facility.

constituent thereof may enter the environment or be emitted into the air or discharged into any

waters, including ground waters.  42 U.S.C. § 6903 (3).  42 U.S.C. § 6903 (14).  The prohibition

of open dumping at 42 U.S.C. § 6945 is enforceable under the citizen suits provision at 42

U.S.C.§ 6972(a) which states:

> Except as provided in subsection (b) or (c) of this section, any person
> may commence a civil action on his own behalf--
>
> **(1)**   **(A)** against any person...who is alleged to be in violation of
> any permit, standard, regulation, condition, requirement,
> prohibition, or order which has become effective pursuant to
> this chapter; or
>
> **(B)** against any person, ... and including any past or present
> generator, past or present transporter, or past or present owner
> or operator of a treatment, storage, or disposal facility, who
> has contributed or who is contributing to the past or present
> handling, storage, treatment, transportation, or disposal of any
> solid or hazardous waste which may present an imminent and
> substantial endangerment to health or the environment....

Although RCRA prohibits open dumping, and sanctions the filing of citizen suits, RCRA

does not specifically define what open dumping is.  Congress conferred this task on the EPA

Administrator, 42 U.S.C.A. § 6944(a).  The EPA accomplishes this task via 40 C.F.R. §§ 257.1

through 257.4.

> (a) Unless otherwise provided, the criteria in §§ 257.1 through
> 257.4 are adopted for determining which solid waste disposal
> facilities and practices pose a reasonable probability of
> adverse effects on health or the environment under sections
> 1008(a)(3) and 4004(a) of the Resource Conservation and
> Recovery Act (The Act).
>
> ....
>
> (1)  Facilities failing to satisfy either the criteria in §§
> 257.1 through 257.4 or §§ 257.5 though 257.30 are
> considered open dumps, which are prohibited under

> section 4005 of the Act.
>
> 2) Practices failing to satisfy either the criteria in §§ 257.1 through 257.4 or §§ 257.5 through 257.30 constitute open dumping, which is prohibited under section 4005 of the Act.

40 C.F.R. § 257.1.

In the First through Fourth counts of the Complaint, Plaintiffs allege that Defendants "have caused and continue to cause a discharge of pollutants in violation of 40 C.F.R. § 257.3-3." (Compl. ¶¶ 77, 85, 94, and 101).  § 257.3-3 states the following:

> **§ 257.3-3 Surface Water.**
>
> (a) For purposes of Section 4004(a) of the Act, a facility shall not cause a discharge of pollutants into waters of the United States that is in violation of the requirements of the National Pollutant Discharge Elimination System (NPDES) under Section 402 of the Clean Water Act, as amended.
>
> (b) For purposes of Section 4004(a) of the Act, a facility shall not cause a discharge of dredged material or fill material to waters of the United States that is in violation of the requirements under Section 404 of the Clean Water Act, as amended.

40 C.F.R. § 257.3-3

NYS&W asserts that § 257.3-3 is not enforceable under RCRA because § 4004(a) of the Act is not enforceable via citizen suits but exists only to guide State governments in the development of solid waste management programs.  Plaintiffs concede this argument, and it is confirmed by the EPA regulations explaining Section 4004(a) of the Act, and the EPA's commentary addressing these criteria, which explained that:

> ... today's amendments... modify the surface-water criterion of § 257.3-3. As originally promulgated, that standard would have made

31

> discharges violating requirements under Section 402 or Section 404 of the Clean Water Act open dumping practices as well. A party causing such a violation could simultaneously be subject to penalties under the CWA and a citizen suit to enjoin "open dumping" under RCRA. Today's amendment eliminates this double liability. However, since the open dump inventory classification for purposes of the State planning program does not impose legal sanctions under RCRA, the Criteria retain the provision that a violation of Section 402 or Section 404 makes a facility an open dump. . .EPA believes that the CWA enforcement mechanisms are sufficient to handle violations under Sections 402 and 404.

46 Fed. Reg. 47048, 47050 (Sep. 23, 1981).  See Also Long Island Soundkeeper Fund v. New York Athletic Club, No. 94-0436, 1996 U.S. Dist. LEXIS 3383 (D.N.Y. Mar. 22, 1996).  In Long Island Soundkeeper Fund, the court granted summary judgment in favor of defendant where plaintiffs, as in the Instant action, mistakenly asserted a RCRA claim via 40 C.F.R. § 257.3-3. The court held that:

> ... the language of the regulations and the accompanying EPA commentary make it clear that the EPA did not intend for the surface water criteria promulgated under section 4004(a) of RCRA (42 U.S.C. 6944(a)) to authorize citizen suits for open dumping practices in violation of section 4005(a) of RCRA (42 U.S.C. § 6945(a)). This conflicts with Plaintiff's contention that it can bring suit for violation of section 4005(a) of RCRA (42 U.S.C. § 6945(a)) alleging violations of surface water criteria promulgated for purposes of section 4004(a) of RCRA (42 U.S.C. § 6944(a)).  Because Congress explicitly delegated to the EPA the authority to develop criteria concerning actionable open dumping practices, the EPA's construction of RCRA's prohibition of open dumping must be given controlling weight unless it is "arbitrary, capricious, or contrary to the statute." (citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984)).

Id. at *31-32.  The facts of the Instant action are analogous.  Plaintiffs have improperly commenced a citizen suit pursuant to RCRA seeking to remedy a violation of § 257.3-3.

Thus Plaintiffs' allegations regarding surface water discharges, even if true, fail to state a claim upon which relief may be granted.  To escape dismissal Plaintiffs must plead facts sufficient to support a claim that NYS&W's rail transloading facilities violate at least one of the EPA's criteria in 40 C.F.R. Part 257 (other than § 257.3-3) that are used to identify illegal open dumps.  South Road Associates v. International Business Machines Corp., 216 F.3d 251, 255-56 (2d Cir. 2000).  This Plaintiffs have conspicuously failed to do. Although each of the five claims of the Complaint contains general allegations of violations of "42 U.S.C. 6945(a) and the implementing regulations at 40 C.F.R. Part 257" (¶¶ 49, 78, 86, 95, 102 and 103), the only specific criteria to which the Complaint makes reference is § 257.3-3 (¶¶ 77, 85, 94 and 101). Each of the First, Second, Third, and Fourth Claims contains the reference to § 257.3-3; the Fifth Claim contains no reference to a specific § 257.3 criteria.  Thus the only § 257.3 criteria referred to in the Complaint is one upon which a RCRA citizen suit may not be brought.

Plaintiffs rely in opposition to NYS&W's motion to dismiss, upon Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1012 (11th Cir. 2004), which holds that a RCRA plaintiff must only allege that: "(1) solid waste, (2) is disposed of at [the facility], (3) that [the facility] does not qualify as a landfill under § 6944, and (4) that [the facility] does not qualify as a facility for the disposal of hazardous waste."  When formulating its third criterion, Parker did not address the Part 257 regulations that provide that a facility may be classified as an open dump if it is shown to violate the specific requirements of one or more individual criteria set forth in those regulations.  See 40 C.F.R. § 257.1.  Amplifying Parker element number 3, as one must, a plaintiff must allege that the facilities meet one or more of the actionable §257 dumping criteria.

Plaintiffs now assert that they do in fact meet criteria other than § 257.3-3.  They "expect

33

that discovery will allow them to prove open dumping violations.  For example, one of the minimum criteria in Part 257 bars a 'facility or practice [from] contaminat[ing] an underground drinking water source beyond the solid waste boundary.' Id.  A solid waste boundary is the 'outermost perimeter of the solid waste (projected in the horizontal plane) as it would exist at completion of the disposal activity).' 40 C.F.R. § 257.3-4." (Plt. Br. in Opp. 11).

Plaintiffs also assert that "[a]dditionally, Plaintiffs expect that discovery will show that the Facilities violate the ban on location in floodplains at 40 C.F.R. § 257.3-1." (Id. at 13).  Further, Plaintiffs assert that the Complaint should be construed to allege that Defendants have failed to ensure that the facilities do not pose a fire hazard, as required by 40 C.F.R. § 257.3-8(b) Id.

These attempts to recast the Complaint to overcome the original reliance on a § 257.3 criterion that is not subject to a RCRA suit must fail.  Plaintiffs rely upon allegations contained in their memoranda and upon extrinsic sources not mentioned in the Complaint, including a U.S. Geological Survey and a Declaration of Plaintiff Andrew Willner.  A court is limited on a motion to dismiss to facts contained and alleged in the Complaint and may not consider facts raised for the first time by parties in a legal brief.  In re Bio-Technology General Corp. Securities Litigation, 380 F.Supp.2d 574, 578 (D.N.J. 2005).

The specific § 257.3 criteria upon which Plaintiffs now seek to rely are detailed and contain a number of component elements.  It is too much of a stretch to infer from allegations of the Complaint that Plaintiffs intended to incorporate them in the Complaint or that fair notice was given to the Defendants that they were accused of violating them.  Consequently the Complaint will be dismissed for failure to state a claim.

34

In the usual event a plaintiff whose complaint is dismissed for failure to state a claim is given the opportunity to submit an amended complaint if he believes the complaint's deficiencies can be cured.  Here Plaintiffs have asserted reasons why they believe violations of certain § 257.3 criteria other than § 257.3-3 can be alleged.  Consequently, if they wish to do so they may file an amended complaint within 30 days of the date of the order implementing this opinion.[7]

## *CONCLUSION*

Addressing Plaintiffs' motions for summary judgment: i) Plaintiffs' motion for summary judgment striking all preemption affirmative defenses is granted; ii) Plaintiffs' motion for summary judgment in their favor on the affirmative defenses of lack of standing will be denied without prejudice to renewal of the motion after discovery on the issue of standing has been taken; iii) Plaintiffs' motion for summary judgment striking all affirmative defenses asserting that the Plaintiffs failed to give notice as required by RCRA will be granted.

Addressing NYS&W's, Delaware Ostego's, and the Cardella Defendants' cross-motion to dismiss the Complaint: i) to the extent that the cross-motion relies on the defense of the diligent prosecution bar to citizen suits, it is denied; ii) to the extent that the cross-motion relies on the defense of the asserted failure of Plaintiffs to give notice as required by the RCRA statute and regulations it is denied; iii) to the extent that the cross-motion relies on the ground that the Complaint fails to state a cause of action, it is granted.  Plaintiff shall have leave to file an

----

[7]NYS&W contends that the new claims may not be considered in this action because they were not included in the notice required by RCRA as a mandatory pre-condition to a citizen suit. The criteria for stating a claim upon which relief may be granted are different from the requirements of a RCRA notice.  Whether an amended complaint is within Plaintiffs' RCRA notice is an issue that can be decided when and if an amended complaint is filed.

amended complaint within 30 days of the date of the order implementing this opinion.

      The court will file an appropriate order.


                            /s/ Dickinson R. Debevoise

_____

                            Dickinson R. Debevoise, U.S.S.D.J.

September 11, 2006